**UNITED STATES of America, Appellee,**

v.

**John NMN FULLER, Leyton Wint, Defendants–Appellants.**

**Docket Nos. 02–1155L, 02–1347.**

United States Court of Appeals, Second Circuit.

Argued: April 3, 2003.

Decided: June 12, 2003.

---

Colleen P. Cassidy, Legal Aid Society, Federal Defender Division Appeals Bureau, New York, N.Y., for Defendant–Appellant Fuller.

John Fuller, White Deer, Pa., submitted a pro se brief.

Richard D. Willstatter, Green & Willstatter, White Plains, N.Y., for Defendant–Appellant Wint.

Justin S. Weddle, Asst. U.S. Atty., New York, N.Y. (James B. Comey, U.S. Atty., Christine H. Chung, Asst. U.S. Atty., New York, N.Y., on the brief), for Appellee.

Before: WALKER, Chief Judge, OAKES and NEWMAN, Circuit Judges.

JON O. NEWMAN, Circuit Judge.

This appeal in a criminal case primarily concerns three narrow issues, one concerning appellate procedure and two concerning sentencing. The first is the appropriate disposition in a criminal case of an appeal filed after the expiration of the applicable time limit due to defense counsel's oversight. The second is the permissible use of a defendant's criminal conduct in making "horizontal" and "vertical" departures under the Sentencing Guidelines. The third is the methodology for imposing sentences on multiple counts. Leyton Wint and John NMN Fuller appeal from the judgments of the District Court for the Southern District of New York (Colleen McMahon, District Judge), entered October 24, 2001, and February 14, 2002, respectively. Wint was sentenced primarily to imprisonment for 41 months, and Fuller was sentenced primarily to imprisonment for 151 months, following their convictions for firearms offenses. We conclude that Wint's appeal should be dismissed and the judgment should be remanded for entry of a new judgment, and Fuller's judgment should be remanded for resentencing.

## Background

*Charges and convictions.* Fuller and Wint were both charged with offenses arising out of a gun-running operation in which they traveled to South Carolina, induced individuals there to purchase firearms, and then transported the guns to New York for resale, in violation of 18 U.S.C. §§ 2, 371, 922(a)(1)(A), 922(a)(3) and 924(n) (1994 & Supp.1999). The offense activity was alleged to have occurred between 1996 and 1999. In addition, Fuller was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) (1994) and, after becoming a fugitive, with bail-jumping, in violation of 18 U.S.C. § 3146 (1994). Wint pled guilty to the gun-running charges. Fuller pled guilty to bail-jumping and went to trial on the firearms charges. The jury convicted him of being a felon in possession of a firearm and could not reach a verdict on the gun-running charges.

*Wint's sentence and appeal.* The District Court sentenced Wint to imprisonment for 41 months, to run consecutively to a prior federal court sentence. The Guidelines calculations need not be detailed since they are not relevant to our disposition of Wint's pending appeal. Judgment in Wint's case was entered October 24, 2001. In a letter to the District Court dated two days later, Wint's counsel asked for an extension of time to file a notice of appeal. On October 26, 2001, Judge McMahon endorsed the motion "Granted." Neither the letter request nor the Court's endorsement specified the duration of the extension. On May 16, 2002, nearly seven months later, Wint's counsel filed a notice of appeal.

*Fuller's sentence.* The District Judge began the Guidelines calculation of Fuller's sentence with a base offense level of 14 for the offense of being a felon in possession of a firearm. *See* U.S.S.G. § 2K2.1(a)(6) (2000). Deeming the gun-running activity to be relevant conduct, she found by a preponderance of the evidence that between 25 and 49 guns were involved, resulting in a 5–level enhancement. *See id.* § 2K2.1(b)(1)(E). She then added 4 levels for Fuller's leadership role, *see id.* § 3B1.1(a), 2 levels for obstruction of justice (bail-jumping), *see id.* § 3C1.1,[1] and, in an adjustment challenged on appeal, 2 levels for his use of a minor in the course of the offense conduct, *see id.* § 3B1.4. This last enhancement was based on a finding that Wint was less than eighteen when Fuller first recruited him for the gun-running activity. These enhancements brought the adjusted offense level to 27. In the initially applicable Criminal History Category ("CHC") II, the sentencing range would have been 78–97 months.

Judge McMahon then made two departures. First, she made a "vertical" departure, increasing the adjusted offense level by 2 levels because she considered the 2–level obstruction of justice enhancement inadequate to reflect the full extent of Fuller's conduct. In addition to becoming a fugitive, he had threatened a witness and suborned the witness's perjury. Second, in an action challenged on this appeal, she made a "horizontal" departure, increasing Fuller's CHC from II to IV. Based on Fuller's possession of a .357 magnum firearm and his having bartered guns for drugs, Judge McMahon concluded that CHC II did not adequately reflect the seriousness of Fuller's past conduct. *See* U.S.S.G. § 4A1.3.

---

1. Where a defendant is sentenced for both an underlying offense and failure to appear (other than failure to appear for service of a sentence), the failure to appear is treated as an obstruction enhancement under section 3C1.1, and the offenses are grouped together under section 3D1.2(c). *See* U.S.S.G. § 2J1.6, comment. (n.3).

The combination of an adjusted offense level of 29 and CHC IV yielded a sentencing range of 121–151 months. Judge McMahon imposed a sentence of imprisonment for 151 months, comprising 121 months on the felon-in-possession charge and a consecutive sentence of 30 months on the bail-jumping charge. The 151-month sentence runs concurrently with the undischarged portion of a state sentence. Fuller filed a timely notice of appeal.

## Discussion

### I. Wint's Appeal

■ There is no dispute that Wint requested his counsel to file a notice of appeal and that counsel did not file a notice until several months after expiration of the maximum allowable 40–day period. *See* Fed. R.App. P. 4(b) (10 days after entry of judgment for filing notice of appeal, plus up to 30 days upon grant of extension for excusable neglect or good cause). The parties are also in agreement that appellate time limits are jurisdictional, *see Browder v. Director,* 434 U.S. 257, 264, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978); *United States v. Rodgers,* 101 F.3d 247, 252 (2d Cir.1996), and that counsel's failure to file a timely appeal in a criminal case, when requested by a defendant, constitutes ineffective assistance of counsel, entitling the defendant to relief, *see Garcia v. United States,* 278 F.3d 134, 137 (2d Cir.2002). The issue is what relief is appropriate.

Wint contends that after dismissing the appeal for lack of jurisdiction, we should remand for resentencing. The Government urges a remand for entry of a new judgment to replace the existing judgment, which the Government concedes could be successfully challenged under 28 U.S.C. § 2255 (2000). Courts granting relief for a successful section 2255 motion challenging counsel's ineffectiveness in not pursuing a direct appeal have used either the resentencing remedy, *see Hollis v. United States,* 687 F.2d 257, 259 (8th Cir.1982), or the more limited remedy of entry of a new judgment, *see United States v. Stearns,* 68 F.3d 328, 331 (9th Cir.1995), *abrogated on other grounds, Roe v. Flores–Ortega,* 528 U.S. 470, 478, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). We have given a district court the choice of remedies. *See Garcia,* 278 F.3d at 138.

Our initial question is whether, on an appeal over which we lack appellate jurisdiction, our only option is to dismiss for lack of jurisdiction and take no further action. We think we are not so limited in making an appropriate disposition. We regard lack of appellate jurisdiction as the absence of authority to adjudicate the merits of an appeal. *See U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. 18, 21, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994) ("[N]o statute could authorize a federal court to decide the merits of a legal question not posed in an Article III case or controversy.").

■ In other contexts where courts have lacked appellate jurisdiction, they have taken action other than simply dismissing the appeal. The most obvious example is the disposition prescribed by the Supreme Court for an appeal over which an appellate court ceases to have jurisdiction because of mootness. In that circumstance, the appellate court has the "duty ... to set aside the decree below and to remand the cause with directions to dismiss." *Duke Power Co. v. Greenwood County,* 299 U.S. 259, 267, 57 S.Ct. 202, 81 L.Ed. 178 (1936); *see United States v. Munsingwear, Inc.,* 340 U.S. 36, 39, 71 S.Ct. 104, 95 L.Ed. 36 (1950). As the Supreme Court has stated, " 'If a judgment has become moot [while awaiting review], this Court may not consider its merits, but may make such disposition of the whole case as justice may require.' " *U.S.*

*Bancorp,* 513 U.S. at 21–22 (*quoting Walling v. James V. Reuter, Inc.,* 321 U.S. 671, 677, 64 S.Ct. 826, 88 L.Ed. 1001 (1944)) (alteration in original). Recognizing that when a case becomes moot while on appeal we lack jurisdiction, we have regularly responded to mootness by dismissing the appeal and at the same time following the *Duke Power/Munsingwear* instruction by vacating the judgment and remanding with directions to dismiss the complaint. *See, e.g., Van Wie v. Pataki,* 267 F.3d 109, 115–16 (2d Cir.2001); *Dennin v. Connecticut Interscholastic Athletic Conference, Inc.,* 94 F.3d 96, 102 (2d Cir.1996); *see also Brooks v. Travelers Insurance Co.,* 297 F.3d 167, 172 (2d Cir.2002) (dismissing appeal and vacating order on appeal); *Haley v. Pataki,* 60 F.3d 137, 142 (2d Cir.1995) (same); *Bragger v. Trinity Capital Enterprise Corp.,* 30 F.3d 14, 17 (2d Cir.1994) (dismissing appeal and remanding with directions to vacate).

■ We have also ruled that where the filing in a district court of a so-called 10–day motion, *see* Fed.R.Civ.P. 59, destroyed our jurisdiction to adjudicate the appeal, we had a limited jurisdiction not only to rule that we lacked jurisdiction to adjudicate "but also to take those steps appropriate to implement a decision declining jurisdiction." *Hertzner v. Henderson,* 292 F.3d 302, 304 (2d Cir.2002). Furthermore, we have taken appropriate action, unrelated to the merits, despite the absence of a notice of appeal invoking our jurisdiction. For example, when a prisoner moves in this Court for a certificate of appealability prior to filing a notice of appeal in a district court, we send the request to the district court with instructions to treat the request as a notice of appeal. *See Marmolejo v. United States,* 196 F.3d 377, 378 (2d Cir. 1999).

If in this case we were simply to dismiss and remit the defendant to his section 2255 remedy, we would precipitate at least one and possibly two other unfortunate consequences. First, we would incur the waste of time and judicial resources to process the section 2255 motion. Second, we would expose the defendant to the risk that he would use up his first opportunity to file a section 2255 motion, thereby subjecting him to the stringent standards applicable to a second section 2255 motion. *See* 28 U.S.C. § 2255, ¶ 8. Although the defendant would have a substantial argument that his initial section 2255 motion should not count as a "first" motion for purposes of section 2255, ¶ 8, because it was needed to obtain entitlement to direct review, rather than to present a collateral challenge after direct review, *see Esposito v. United States,* 135 F.3d 111, 112–14 (2d Cir.1997); *United States v. Scott,* 124 F.3d 1328, 1329–30 (10th Cir.1997), that argument itself would precipitate litigation that should be avoided if possible. Third, dismissal of the appeal would leave the current judgment in place, at least until the granting of a motion under section 2255, thereby risking expiration of a substantial part and possibly all of the one-year limitations period of 28 U.S.C. § 2255, ¶ 6, unless the time devoted to taking the steps required to obtain an appealable judgment were deemed to toll the one-year period.

■ Rather than limit our disposition to a dismissal, which would precipitate a section 2255 motion, we think the most appropriate disposition is to dismiss the appeal as untimely and remand to the District Court with instructions to vacate the judgment and enter a new judgment from which a timely appeal may be taken. At first glance, that course appears to run afoul of the usual rule that a court may not normally circumvent appellate time limits by entering a new judgment. *See Mendes Junior International Co. v. Banco do Brasil, S.A.,* 215 F.3d 306, 312–15 (2d Cir.

2000). However, the appropriate strictness of that rule need not apply to a case such as the pending one where the judgment is vulnerable to being set aside in any event, not simply to overlook an unexcused late filing of a notice of appeal but to remedy a denial of constitutional right. In remanding for entry of a new judgment despite our lack of appellate jurisdiction, we are not adjudicating any aspect of the merits of the appeal that Wint wishes to pursue from his judgment of conviction; we are taking only preliminary steps to enable him to pursue that appeal in a manner that will provide a sound jurisdictional basis for whatever ruling is ultimately made on the merits of that appeal.

## II. Fuller's Appeal

*Enhancement for using a minor.* Judge McMahon enhanced Fuller's offense level by 2 levels for using a minor in the gun-running activity, see U.S.S.G. § 3B1.4. Fuller disputes the finding that Wint was a minor when Fuller recruited him. Although the Court's factual finding is subject to review only for clear error, *United States v. Zichettello,* 208 F.3d 72, 108 (2d Cir.2000), the current record as to Wint's age at the time Fuller recruited him is too unclear to support such a finding without further inquiry.

■ The District Court relied on Wint's allocution when entering his guilty plea, various sentencing documents, and trial testimony, but did not hold a *Fatico* hearing. Wint stated at his plea allocution that "[d]uring 1997 and 1998 I agreed with others to deal in guns." Wint turned eighteen on January 10, 1997. Fuller might have recruited Wint during the first 10 days of 1997, before Wint's eighteenth birthday, but his statement does not so indicate. As for sentencing documents, Wint's presentencing report ("PSR") stated that Wint "may have been under the age of 18" when Fuller introduced him to gun-running. In an effort to minimize Wint's role in the offense, his counsel escalated this tentative assessment by writing to the Court that "it is clearly stated in the [PSR] that Mr. Wint at the time of the criminal activity was a youth (under 18)." Defense counsel's letter is something less than an unequivocal admission. The PSR indicated that Wint met Fuller in September 1996 and first accompanied him to South Carolina during the subsequent holiday season, believing Fuller to be involved with marijuana trafficking. The PSR also reports Wint's statement that he did not participate in gun-running until September 1997. The trial testimony cited by the Government establishes only that Fuller (but not necessarily Wint) was involved in gun-running in South Carolina as early as July 1996 and that a witness dealt with Fuller and Wint in July 1997 (after Wint's eighteenth birthday).

Fuller might have recruited Wint for gun-running before January 10, 1997, but the record thus far developed is unclear on the point. Since Fuller must be resentenced in any event, see infra, clarification that Wint was recruited before his eighteenth birthday is warranted. Of course, further inquiry will not be needed if the Government declines to press for the "recruiting" enhancement, or if the District Court determines that, because of an upward departure, the same sentence would be imposed whether or not the enhancement is made, see *United States v. Bermingham,* 855 F.2d 925, 934–35 (2d Cir. 1988).

*Horizontal departure.* In increasing Fuller's CHC from II to IV pursuant to U.S.S.G. § 4A1.3, Judge McMahon relied on Fuller's possession of a .357 magnum revolver, which had been the basis of a dismissed charge in South Carolina, and his bartering of guns for drugs. Fuller

contends that this horizontal departure was improper because both acts were part of his relevant criminal conduct. The Government concedes that the horizontal departure was improper, but contends that on remand the bartering of guns for drugs can be the basis of a vertical departure to increase the offense level, pursuant to U.S.S.G. § 5K2.0. Fuller responds that it would be impermissible on remand to convert any part of the horizontal departure into a vertical departure.

The two types of departures must be kept distinct, *see United States v. Tropiano*, 50 F.3d 157, 162–64 (2d Cir. 1995), and only acts "not relevant to the offense of conviction" may be used to make a horizontal increase in the CHC, *see United States v. Kim*, 896 F.2d 678, 683 (2d Cir.1990). As the Government recognizes, Fuller's possession of the .357 magnum was unavailable for a horizontal departure because it was one of the weapons included in the total that resulted in a relevant conduct enhancement in the offense level, and having been so counted, would not be an available basis for a vertical departure, at least in the absence of some extraordinary circumstances concerning that weapon.

The bartering of guns for drugs, if not technically "relevant conduct" for purposes of an offense-specific adjustment, was sufficiently related to the offense to make it also unavailable as a basis for a horizontal departure. Nevertheless, such conduct remained available as a basis for a vertical departure to increase the offense level because it played no part in setting the base offense level or any of the offense-specific adjustments. *See United States v. Hernandez*, 941 F.2d 133, 140–41 (2d Cir.1991) (drug-dealing purpose of weapon possession available for vertical departure after possession of weapon included in offense level determination); *Kim*, 896 F.2d at 683 (physical injury inflicted in course of fraud offense offered as example of conduct appropriate for vertical departure). Simply because the District Court used the bartering activity for the wrong kind of departure is not a reason to preclude its use on remand for a permissible type of departure.

*Imposition of aggregate sentence.* Although not noticed by either party, an easily correctable error occurred in the imposition of Fuller's aggregate sentence of 151 months. We identify the matter to avoid its repetition after the resentencing, which must take place in any event.

After determining that Fuller's sentencing range was 121–151 months, Judge McMahon selected 151 months as the appropriate term of imprisonment. Because the maximum sentence on the count charging Fuller with being a felon in possession of a weapon was 10 years, *see* 18 U.S.C. §§ 922(g), 924(a)(2), she sentenced him to 120 months on that count. Then, attempting to impose the balance of the 151–month total punishment, she sentenced Fuller to a consecutive term of 30 months on the bail-jumping count, resulting in a combined term that was one month less than her announced total punishment of 151 months. The written judgment attempted to rectify the arithmetic error by stating the punishment on the felon-in-possession count to be 121 months, but this was one month more than the statutory maximum for that count. Furthermore, the consecutive sentence of 30 months was not in conformity with the requirements of U.S.S.G. §§ 5G1.2(b) and 5G1.2(d). Subsection 5G1.2(b) provides that the total punishment shall be imposed on *each* count up to the statutory maximum (here, 120 months on the felon-in-possession count and 60 months on the bail-jumping count, 18 U.S.C. § 3146(b)(1)(A)(ii)), and subsection

5G1.2(d) provides that if a sentence on a count carrying the highest statutory maximum punishment (here, the felon-in-possession count) is less than the total punishment, the sentence on a remaining count shall be imposed consecutively but "only to the extent necessary to produce a combined sentence equal to the total punishment." Thus, the correct way to have sentenced Fuller to implement Judge McMahon's orally pronounced total punishment of 151 months would have been to sentence him to 120 months on the felon-in-possession count and 60 months on the bail-jumping charge, with 31 months of the latter sentence to run consecutively.[2] *See United States v. McLeod*, 251 F.3d 78, 83–84 (2d Cir.2001). This method of imposing an aggregate sentence assures that if the sentence on the count carrying the greater punishment is ever vacated, the sentence on the remaining count will effectuate the total punishment to the extent of the statutory maximum for that count.

## Conclusion

On Wint's appeal, we dismiss for lack of jurisdiction, and remand with directions to enter a new judgment, from which a timely appeal may be taken. On Fuller's appeal, we affirm the conviction,[3] and remand for resentencing consistent with this opinion.

2. We suggest that the prosecutor should have promptly alerted the District Judge to the arithmetic error in implementing the 151–month sentence in the oral statement of the sentence on the two counts, and the probation officer should have assisted the Judge in preparing a written judgment that correctly imposed sentence on both counts.

3. We have considered and rejected Fuller's remaining contentions, including those raised in his *pro se* brief.