06-5381-cr
United States v. Frias

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2007

(Submitted: January 22, 2008          Decided: March 31, 2008)

Docket No. 06-5381-cr

-------------------------------------

United States of America,

Appellee,

- v -

Octavio Frias,

Defendant-Appellant.

-------------------------------------

Before:   CARDAMONE, SACK, and KATZMANN, Circuit Judges.

Appeal by the defendant pro se from an amended judgment of conviction in the United States District Court for the Southern District of New York (John F. Keenan, Judge) for conspiracy to commit murder in violation of 21 U.S.C. § 848(e)(1)(A) in connection with a narcotics offense punishable under 21 U.S.C. § 841(b)(1)(A), reimposing a sentence of life imprisonment after Booker remand.  On appeal, the defendant asserts insufficiency of the indictment, erroneous jury instructions, and various sentencing errors.  The government raises no objection to the untimeliness of the defendant's notice of appeal.

Affirmed.

Octavio Frias, Lewisburg, PA, pro se.

Michael J. Garcia, United States Attorney for the Southern District of New York, Joshua A. Goldberg, Celeste L. Koeleveld, Assistant United States Attorneys, New York, NY, for Appellee.

SACK, Circuit Judge:

Defendant Octavio Frias appeals pro se from an amended judgment of conviction in the United States District Court for the Southern District of New York (John F. Keenan, Judge) for conspiracy to commit murder in violation of 21 U.S.C. § 848(e)(1)(A) in connection with a narcotics offense punishable under 21 U.S.C. § 841(b)(1)(A), which reimposes a sentence of life imprisonment after Booker remand. The government raises no objection to the untimeliness of the defendant's notice of appeal.

We are called upon to decide whether Federal Rule of Appellate Procedure 4(b), which governs the time to appeal from a criminal judgment, requires us to dismiss sua sponte an untimely appeal. We conclude that the time limits of Rule 4(b) are not jurisdictional and are therefore capable of forfeiture by the government. Frias's appeal nonetheless lacks merit. We therefore affirm his conviction and sentence.

I.

On January 2, 2003, the defendant, Octavio Frias, was charged by superseding indictment with one count of committing murder while engaged in a conspiracy to distribute and possess with intent to distribute more than one kilogram of heroin and

2

more than five kilograms of cocaine.  Viewed in the light most favorable to the government, the evidence at trial established that Frias assisted in a large-scale narcotics and gambling operation run by Roberto Martinez-Martinez, a/k/a "Papito," and Mario Lobo, a/k/a "Alberto Cruz."  When Lobo's gambling losses threatened the narcotics business, Martinez-Martinez decided to have Lobo killed.  Frias made all the arrangements: he hired gunmen, pointed out Lobo for them on the night of the murder, and paid their travel expenses when the job was successfully completed.  On March 12, 2003, the jury returned a verdict of guilty.  On July 1, 2004, the court sentenced Frias principally to a term of life imprisonment.[1]

Frias appealed.  We summarily affirmed his conviction but remanded for resentencing in light of United States v. Booker, 543 U.S. 220 (2005).  United States v. Frias, No. 04-4106-cr, slip op. at 3 (2d Cir. Sept. 28, 2005) ("Frias I").  On January 4, 2006, the district court, having conducted sentencing proceedings anew pursuant to our remand, entered an amended judgment again imposing a life sentence.

On September 28, 2006, proceeding pro se, Frias filed a notice of appeal.  In his brief on appeal, Frias asserts insufficiency of the indictment, erroneous jury instructions, and various sentencing errors.  Frias also concedes that his appeal

[1] Judge Allen G. Schwartz, who presided at trial, passed away shortly thereafter.  The case was then reassigned to Judge Keenan for sentencing.

3

is untimely, stating that his attorney refused to file an appeal on his behalf after resentencing. The government's brief responds to each of Frias's claims but makes no mention of the appeal's untimeliness.

II.

We consider <u>sua sponte</u> our subject-matter jurisdiction over this appeal, "as we are obliged to do [irrespective of whether either party raises the issue] when it is questionable." <u>Henrietta D. v. Giuliani</u>, 246 F.3d 176, 179 (2d Cir. 2001). Here, Frias concedes that his notice of appeal was untimely but the government has not asked us to dismiss his appeal for that reason.

We have stated that the time limits prescribed by Federal Rule of Appellate Procedure 4(b), which governs the time to appeal from a criminal judgment, are jurisdictional, barring us from adjudicating the merits of an untimely appeal.[2]  <u>See</u>

---

[2] Rule 4(b) states, in relevant part:

(1) Time for Filing a Notice of Appeal.

(A) In a criminal case, a defendant's notice of appeal must be filed in the district court within 10 days after the later of:
(I) the entry of either the judgment or the order being appealed; or
(ii) the filing of the government's notice of appeal.

...

(4) Motion for Extension of Time.  Upon a finding of excusable neglect or good cause, the district court may -- before or after the time has expired, with or without motion and

4

United States v. Fuller, 332 F.3d 60, 64 (2d Cir. 2003) (although it was undisputed, treating failure to comply with time limits in Rule 4(b) as jurisdictional); United States v. Ferraro, 992 F.2d 10, 11 (2d Cir. 1993) (per curiam) ("[T]he requirement of a timely notice of appeal in rule 4(b) is jurisdictional.").  More recently, however, we have noted that a series of Supreme Court decisions has "called into question" our previous statements regarding the jurisdictional nature of Rule 4(b).  United States v. Moreno-Rivera, 472 F.3d 49, 50 n.2 (2d Cir. 2006) (per curiam).  As explained below, we now conclude that Rule 4(b) is not jurisdictional and that we may therefore consider Frias's appeal on its merits.[3]

In Kontrick v. Ryan, 540 U.S. 443 (2004), the Supreme Court held that Rule 4004 of the Federal Rules of Bankruptcy Procedure, which sets a 60-day time limit on the right of a creditor to file a complaint objecting to a debtor's discharge, is not jurisdictional.  Id. at 447.  Because "[o]nly Congress may determine a lower federal court's subject-matter jurisdiction,"

notice -- extend the time to file a notice of
appeal for a period not to exceed 30 days
from the expiration of the time otherwise
prescribed by this Rule 4(b).

[3]  "[W]e are bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of our Court or by the Supreme Court."  United States v. Brutus, 505 F.3d 80, 87 n.5 (2d Cir. 2007) (internal quotation marks and citation omitted).  Although we conclude that the prior rulings of this Court on this issue have been effectively overruled by the Supreme Court in the cited cases, we have nonetheless taken the precaution of circulating this opinion to all active members of this court before filing.  See id.

id. at 452, the Court reasoned that time limits and filing deadlines originating only in the Bankruptcy Rules, and not in the United States Code, "are claim-processing rules that do not delineate what cases bankruptcy courts are competent to adjudicate," id. at 454. The Court acknowledged that it had sometimes misused the term "jurisdictional" to describe claim-processing rules that are mandatory or inflexible. Id. at 454-55. The distinction is important, however, because

> [c]haracteristically, a court's subject-matter jurisdiction cannot be expanded to account for the parties' litigation conduct; a claim-processing rule, on the other hand, even if unalterable on a party's application, can nonetheless be forfeited if the party asserting the rule waits too long to raise the point.

Id. at 456.

The Supreme Court revisited questions of subject-matter jurisdiction in Eberhart v. United States, 546 U.S. 12 (2005) (per curiam), and Bowles v. Russell, 127 S. Ct. 2360 (2007). In Eberhart, the Court held that Federal Rule of Criminal Procedure 33(a), which sets a seven-day deadline for filing a motion for new trial, was virtually indistinguishable from Bankruptcy Rule 4004 and was therefore not jurisdictional. Eberhart, 546 U.S. at 15-16, 19. In Bowles, by contrast, the Court held that Federal Rule of Appellate Procedure 4(a), which governs the time to appeal in a civil case, is jurisdictional. Bowles, 127 S. Ct. at 2366.

Bowles highlighted "the jurisdictional distinction between court-promulgated rules and limits enacted by Congress."

6

*Id.* at 2365. Unlike Bankruptcy Rule 4004 and Criminal Rule 33(a), the Court explained, the time limit in Appellate Rule 4(a) is derived from a federal statute, 28 U.S.C. § 2107(a), which requires parties to file notices of appeal within 30 days of the entry of the judgment.[4] *Id.* at 2363-65. Because the 30-day limit was statutory, the Court reasoned, it was properly construed as jurisdictional. *Id.* at 2365.

The *Bowles* Court addressed the jurisdictional status of Rule 4(a), which provides the time limit for appealing from a civil judgment. It was not called upon to discuss Rule 4(b), the time for appealing in a criminal case. Several of our sister circuits, applying the principles announced in *Kontrick*, have concluded that Rule 4(b), unlike Rule 4(a), is not jurisdictional. *See* United States v. Garduño, 506 F.3d 1287, 1288 (10th Cir. 2007); United States v. Martinez, 496 F.3d 387, 388 (5th Cir.) (per curiam), cert. denied, 128 S. Ct. 728 (2007); United States v. Sadler, 480 F.3d 932, 934 (9th Cir. 2007). We share their view.

As noted, critical to the Supreme Court's decisions in *Kontrick* and *Bowles* were the facts that Appellate Rule 4(a)'s origin is statutory whereas Bankruptcy Rule 4004's is not. *See* Bowles, 127 S. Ct. at 2364-65; Kontrick, 540 U.S. at 452-54; *see*

---

[4] Section 2107(a) provides, "Except as otherwise provided in this section, no appeal shall bring any judgment, order or decree in an action, suit or proceeding of a civil nature before a court of appeals for review unless notice of appeal is filed, within thirty days after the entry of such judgment, order or decree." 28 U.S.C. § 2107(a).

7

also Grullon v. Mukasey, 509 F.3d 107, 112 (2d Cir. 2007) ("Bowles emphasized repeatedly that its reasoning was based on the statutory origin of the limitation . . . ."). "'It is axiomatic'" that court-prescribed rules of practice and procedure, as opposed to statutory time limits, "'do not create or withdraw federal jurisdiction.'" Kontrick, 540 U.S. at 452 (brackets omitted) (quoting Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 370 (1978)). Appellate Rule 4(b), like Bankruptcy Rule 4004, is not based on a statutory prescription. As the historical and statutory notes to 28 U.S.C. § 2107 indicate, the time to file a notice of appeal in both civil and criminal cases was governed by a single statute until 1948, when Congress amended it to cover only civil actions. See Act of June 25, 1948, ch. 646, § 2107, 62 Stat. 869, 963 (codified as amended at 28 U.S.C. § 2107). For criminal cases, the time limit was then set forth in Federal Rule of Criminal Procedure 37(a), and is now covered by Federal Rule of Appellate Procedure 4(b). See 18 U.S.C. § 3732. The time to appeal a criminal judgment, therefore, is set forth only in a court-prescribed rule of appellate procedure. Rule 4(b), unlike Rule 4(a), is not grounded in any federal statute. Accord Garduño, 506 F.3d at 1290; Martinez, 496 F.3d at 388; Sadler, 480 F.3d at 938. It therefore does not withdraw federal jurisdiction over criminal appeals.

United States v. Robinson, 361 U.S. 220 (1960), does not require us to conclude otherwise. Although Robinson, a

8

criminal case, states that "the taking of an appeal within the prescribed time is mandatory and jurisdictional," id. at 229, the Supreme Court subsequently cited Robinson "as an example of when [it had] been 'less than meticulous' in [its] use of the word 'jurisdictional.'" Eberhart, 546 U.S. at 18 (quoting Kontrick, 540 U.S. at 454).  And in Robinson, unlike in this case, the government moved to dismiss the defendants' appeals as untimely. Robinson, 361 U.S. at 221.  As the Court explained in Eberhart:

> Robinson is correct not because the District Court lacked subject-matter jurisdiction, but because district courts must observe the clear limits of the Rules . . . when they are properly invoked.  This does not mean that [time] limits . . . are not forfeitable when they are not properly invoked.

546 U.S. at 17 (italics in original).

Our determination that Rule 4(b) is not jurisdictional, then, does not authorize courts to disregard it when it is raised.  When the government properly objects to the untimeliness of a defendant's criminal appeal, Rule 4(b) is mandatory and inflexible.  See Eberhart, 546 U.S. at 17-18; Moreno-Rivera, 472 F.3d at 50 n.2; see also United States v. Singletary, 471 F.3d 193, 196 (D.C. Cir. 2006).[5]  But Rule 4(b), even when properly invoked, does not deprive us of subject-matter jurisdiction over the appeal.  See Kontrick, 540 U.S. at 455 ("Clarity would be facilitated if courts and litigants used the label 'jurisdictional' not for claim-processing rules, but only for

_____

[5] We need not decide whether a court may, in its discretion, dismiss sua sponte an untimely appeal even when the government fails to invoke Rule 4(b).

prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority."). And where, as here, the government forfeits an objection to the untimeliness of a defendant's appeal by failing to raise it, we act within our jurisdiction when we decide to consider the appeal as though it were timely filed.

III.

Having considered at the outset, as we are required to do, whether we have jurisdiction, we proceed to consideration of the appeal on its merits. We conclude that Frias is not entitled to relief.

First, we reject Frias's challenges to the jury instructions used at his trial, the district court's Sentencing Guidelines calculations, and the findings of fact underlying those calculations. This is Frias's second appeal. With the exception of the issue of sentencing post-Booker, we resolved the merits of his appeal in Frias I. See Frias I, slip op. at 2-3. The scope of this second appeal is limited by the "law of the case" doctrine.

> The law of the case ordinarily forecloses
> relitigation of issues expressly or impliedly
> decided by the appellate court. And where an
> issue was ripe for review at the time of an
> initial appeal but was nonetheless foregone,
> it is considered waived and the law of the
> case doctrine bars the district court on
> remand and an appellate court in a subsequent
> appeal from reopening such issues unless the
> mandate can reasonably be understood as
> permitting it to do so. . . . For similar
> reasons, . . . the law of the case ordinarily

10

> prohibits a party, upon resentencing or an appeal from that resentencing, from raising issues that he or she waived by not litigating them at the time of the initial sentencing.

United States v. Quintieri, 306 F.3d 1217, 1229 (2d Cir. 2002) (internal quotation marks, citations, and footnote omitted), cert. denied sub nom. Donato v. United States, 539 U.S. 902 (2003).

Because we affirmed Frias's conviction in Frias I, Frias cannot now claim error in the jury instructions. Our remand was limited to resentencing in light of United States v. Booker, 543 U.S. 220 (2005), which declared the Sentencing Guidelines advisory. Therefore, we will not consider Frias's challenge to the district court's Sentencing Guidelines calculations or to the findings of fact underlying those calculations. See United States v. Williams, 475 F.3d 468, 475-76 (2d Cir. 2007), cert. denied, 128 S. Ct. 881 (2008); Quintieri, 306 F.3d at 1229.[6]

We will, however, examine Frias's challenge to the sufficiency of the indictment insofar as he asserts that it "fails to invoke the court's jurisdiction or to state an

---

[6] The law of the case doctrine admits of certain exceptions -- for example, when the appellant did not previously have an incentive or opportunity to raise the issue; when the issue arises from events that occurred after the original appeal; or in light of other "cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Quintieri, 306 F.3d at 1230 (internal quotation marks and citation omitted). Those exceptions do not apply here.

11

offense."  The Federal Rules of Criminal Procedure provide that such a challenge may be heard "at any time while the case is pending."  Fed. R. Crim. P. 12(b)(3)(B).  "At the same time, however, when a challenge is urged for the first time on appeal, indictments and informations are construed more liberally and every intendment is then indulged in support of the sufficiency." United States v. Davila, 461 F.3d 298, 308 (2d Cir. 2006) (internal quotation marks, citation, and ellipsis omitted), cert. denied, 127 S. Ct. 1485 (2007).  Typically, to state an offense, an indictment "need only track the language of the statute and, if necessary to apprise the defendant of the nature of the accusation against him, state time and place in approximate terms."  United States v. Flaharty, 295 F.3d 182, 198 (2d Cir.) (internal quotation marks, citation, and ellipsis omitted), cert. denied, 537 U.S. 936 (2002).

The grand jury charged Frias with violating 21 U.S.C. § 848(e)(1)(A), which provides in relevant part as follows:

> [A]ny person . . . engaging in an offense punishable under section 841(b)(1)(A) of this title . . . who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death.

The indictment against Frias charges:

> On or about September 21, 1991, in the Southern District of New York, while engaged in an offense punishable under Section 841(b)(1)(A) of Title 21, United States Code, namely, a conspiracy to distribute and

12

> possess with intent to distribute one kilogram and more of heroin and five kilograms and more of cocaine, OCTAVIO FRIAS, the defendant, and others known and unknown, unlawfully, intentionally, and knowingly killed, counseled, commanded, induced, procured and caused the intentional killing of Mario Lobo, a/k/a, "Alberto Cruz," in a restaurant located at 1490 St. Nicholas Avenue in Manhattan.

United States v. Frias, No. 01 Cr. 307, Superseding Indictment, dated January 2, 2003. The indictment plainly tracks the language of the statute and states the time and place of the alleged murder. It was therefore sufficient to invoke the district court's jurisdiction and to state an offense.

Last, we conclude that the district court's sentence on remand was reasonable. In imposing a sentence, the district court is required to consider, among other things, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6); see Kimbrough v. United States, 128 S. Ct. 558, 574 (2007). Frias argues that his sentence was unreasonable because he received a life sentence whereas his co-defendant, Martinez-Martinez, was equally culpable and received a sentence of only 25 years.[7] This argument is unavailing. We have held that section 3553(a)(6) requires a district court to consider nationwide sentence disparities, but does not require a

---

[7] We note that Frias preserved this issue below but did not raise it on appeal until he filed a reply brief. We exercise our discretion to consider the claim because it was fully briefed and argued before the district court and because the government addressed generally the reasonableness of Frias's sentence in its own brief on appeal.

district court to consider disparities between co-defendants. United States v. Wills, 476 F.3d 103, 109-11 (2d Cir. 2007).[8] In any event, Frias and Martinez-Martinez are not similarly situated. One highly relevant difference between them is that Martinez-Martinez pleaded guilty to two counts that carried a statutory maximum sentence of 25 years, whereas Frias's offense of conviction carries a statutory range of 20 years to life and a Guidelines sentence of life. "[I]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable . . . ." United States v. Fernandez, 443 F.3d 19, 27 (2d Cir.), cert. denied, 127 S. Ct. 192 (2006). We conclude that Frias's sentence of life imprisonment for conspiracy to commit murder in violation of 21 U.S.C. § 848(e)(1)(A) in connection with a narcotics offense punishable under 21 U.S.C. § 841(b)(1)(A) falls comfortably within that range.

* * *

For the foregoing reasons, the amended judgment of the district court is affirmed.

---

[8] "We do not, as a general matter, object to district courts' consideration of similarities and differences among co-defendants when imposing a sentence." Wills, 476 F.3d at 110.

14